32377. CONCERNED TAXPAYERS OF CLARKE COUNTY et al. v. CLARKE COUNTY SCHOOL DISTRICT et al.

HALL, Justice.

The appellants sought an injunction against the Clarke County School District, and the members of its board of education, to restrain them from setting an annual tax levy designed to produce a surplus for use in constructing a new school. The board chose a levy of 16.75 mills for fiscal 1976, after learning that this rate (along with other factors) had produced a surplus of about $400,000 in fiscal 1975. The projections for fiscal 1976 forecast a $600,000 surplus at the 16.75 mill rate. The board planned to use these surpluses, plus the one projected for 1977, to pay for the construction of a new school. Appellants assert that these planned annual surpluses are unlawful, since in their view the board must incur bonded indebtedness to pay for school construction. We disagree.

The Clarke County School District was established by an Act of the General Assembly, Ga. L. 1955, p. 3057, enacted pursuant to a local constitutional amendment

---

(set out at Ga. L. 1953, p. 560). Section 15 of that Act gives the board the power to recommend an annual budget levy "for the support and maintenance of schools, libraries, and other operations and functions coming within its jurisdiction." The "jurisdiction" of the board is partially set out in section 10, which gives the board the authority. to "construct . . . buildings for school and library purposes." Section 16 gives the board the additional authority to incur bonded indebtedness to build schools and to set an additional tax levy to retire the bonds.

Appellant argues that sections 15 and 16 are mutually exclusive, and that section 16 is the only authority for funding school construction. The taxing authority granted by section 15 is said to be limited to use for operations other than school construction.

We construe these sections differently. The legislative intent to give the board broad authority and discretion in managing the school system is manifest from the terms of the Act. See § 23, Ga. L. 1955, at 3075. Section 4 grants the board all the powers given other public school systems *in addition* to the powers expressly granted by the constitutional amendment and the Act. Sections 10 and 15 are broadly phrased to grant the board the authority and means to do those things necessary to manage the system.

While appellants would read the authority to tax in section 15 as if it said only "for the support and maintenance of schools," the sentence continues, and allows taxation "for the support and maintenance of . . . operations and functions coming within the jurisdiction" of the board. The construction of schools is an operation or function within the jurisdiction of the board. We also note that section 12 of the Act, Ga. L. 1955, at p. 3068, specifically contemplates the use of accumulated annual surpluses from prior years to fund current contracts. The case of *City Council of Dawson v. Dawson Waterworks Co.*, 106 Ga. 696 (32 SE 907) (1899), relied on by appellants, is not on point.

The authority granted by section 16 is cumulative of the authority to set an annual budget levy under section 15. The latter levy may be used to accumulate a fund, over a reasonable period of time, in order to provide for the construction of a particular school, provided the 20 mill

limit on the annual budget levy is not exceeded. In this case, the board planned to accumulate funds for only two years. The purpose of these funds was to pay the local contribution towards construction of a school for which state funds had already been committed. Construction was to begin in the near future. In this situation, the board was within its authority in setting the 16.75 mill rate.

This case is one of first impression, but we note that the result is supported by dicta in *Bd. of Commrs. &c. of Twiggs County v. Bond,* 203 Ga. 558 (47 SE2d 511) (1948). The language of the grant of authority in the case at hand differs from that in the *Twiggs* case, but the grant to the Clarke Board of Education is equally broad.

Both sides have forcefully argued policy arguments in favor of each type of funding as applied to school construction. But these matters are left for the members of the board to weigh in reaching their decision. Since the board has the authority to use the annual levy for school construction, we cannot interfere with that decision unless there has been a "gross or palpable abuse of discretion." *Watkins v. Jackson,* 227 Ga. 213, 214 (179 SE2d 747) (1971); *Warren v. Davidson,* 218 Ga. 25, 26 (126 SE2d 221) (1962). There is no abuse of discretion in the present case.

*Judgment affirmed. All the Justices concur, except Jordan, Bowles and Marshall, JJ., who dissent.*

SUBMITTED JUNE 3, 1977 — DECIDED SEPTEMBER 7, 1977 — REHEARING DENIED OCTOBER 26, 1977.

*Fortson, Bentley & Griffin, Edwin Fortson,* for appellants.

*Erwin, Epting, Gibson & McLeod, Eugene A. Epting,* for appellees.

BOWLES, Justice, dissenting.

The power granted to boards of education should be liberally construed to accomplish their general purposes. *Bd. of Commrs. &c. of Twiggs County v. Bond,* 203 Ga. 558 (47 SE2d 511) (1948). On the other hand, "if there is any doubt as to the power of the county to tax in any particular instance, it must be resolved in the negative." *Richmond*

*County Business Assn. v. Richmond County,* 224 Ga. 854, 856 (165 SE2d 293) (1968).

The language of section 15 of the enabling statute, Ga. L. 1955, is sufficiently broad to allow the board of education to levy millage within the 20 mill limit for almost any purpose, including the purpose of capital outlay provided the amounts levied are reasonably used for that purpose under the annual budget requirements for the school year in which the tax is imposed. Otherwise, the board of education would be powerless to add an additional room or rooms or to repair existing school buildings.

Section 15 of the local Act makes provision for the *annual budget of the school system* and the rate of levy necessary to be made for the "support and maintenance of schools, libraries and other operations and functions coming within the jurisdiction of said countywide district." It has no specific provision for constructing, erecting, or enlarging necessary buildings. I readily admit that there would be implied authority to construct buildings if reasonably carried out during the course of a budget year or overlapping a budget year. The section recognizes the possibility that money appropriated for a given year may not be expended during that year as the Act provides that such funds "shall continue to be funds of said system and shall not revert to any other purpose." This to my mind means that surplus funds carried over from one year to the next, could not be used for any other purpose except the purpose for which the levy was made in the budget year for which there was a carryover. Thus, such funds would be cash on hand at the beginning of the next succeeding budget year, thus reducing the amounts necessary to be budgeted for the succeeding year. If they were not budgeted for capital outlay purposes during the year in which they were requested then I do not believe they could be legally put into a reserve account for that purpose for a succeeding year merely because they were carryover funds.

Section 16 of the Act clearly authorizes the board of education to incur bonded indebtedness for the purpose of "constructing, erecting, enlarging, repairing, improving the necessary buildings, and improving the necessary

grounds for the use of the public schools and libraries of said districts, and for other purposes coming within the jurisdiction of said district, and for purchasing, acquiring and leasing lands and buildings and such other property as may be necessary for such purposes. . ." Thus, a reasonable construction of the authority to levy taxes under section 15 is to meet the year to year requirements of the school board. On the other hand, section 16 gives adequate authority for the issuing of bonds for capital outlay purposes.

If the majority rule is sound, the board of education could accumulate such funds out of annual budget requirements, over a long period of years and one generation of taxpayers would in effect be required to pay for capital expenditures for a succeeding generation.

When the carryover funds for the year 1975 were put into a special reserve account and not used against the 1976 budget needs, and when the board deliberately levied a tax in the year 1976 in order to create a planned surplus above the needs of 1976, in my opinion they exceeded their authority and discretion. Although some plans were made during the year 1976 to build a building in 1977 and the total time span does not exceed three years it could just as easily have been 10 or 20 years in the future.

In my judgment the actions of the board were not in keeping with the authority and intent of the local and special law authorizing them to act, and I would hold that the totality of their actions was an abuse of their discretion.

I respectfully dissent, and am authorized to state that Justice Jordan and Justice Marshall join in this dissent.